[Civ. No. 212.   Second Appellate District.—December 4, 1906.]

## STAFFORD BIXBY, Respondent, v. EMANUEL BASTADY and AUGUST STAHLKE, Appellants.

APPEAL—REVIEW OF EVIDENCE—STATEMENT—SEPARATE SPECIFICATIONS OF INSUFFICIENCY.—Where it appears that the specifications of insufficiency of the evidence, though embodied in a different document from the statement on motion for a new trial, were in fact treated by the counsel and the court as part thereof, they must be so considered upon appeal.

ID.—FINDINGS AGAINST EVIDENCE—FAILURE TO COMPLY WITH CONTRACT FOR PUMPING PLANT.—Upon a review of the evidence, it is held that findings that the respondent has complied with the contract sued upon to furnish a pumping plant of specified capacity were against the evidence.

ID.—STIPULATED PRICE—VALUE OF PLANT—RIGHT OF RECOVERY.—*Held* that when the suit was brought the plaintiff was not entitled to recover the specific price agreed upon; nor is he entitled, under the terms of the contract, to recover the value of the plant, without showing either a compliance with those terms or the value of the plant actually delivered and kept by the defendant, as compared with the plant contracted for; and that, on another trial, upon such showing, he will be entitled to recover the value of the plant, not exceeding the stipulated price.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

E. F. Hahn, and Hahn & Hahn, for Appellants.

Taylor & Forgy, for Respondent.

SMITH, J.—Appeal from a judgment for the plaintiff, and from an order denying the defendants' motion for a new trial. The suit was brought to recover the contract price of a pumping plant sold to the defendants by plaintiff's assignor, the Luitweiler Company. The terms of the contract are contained in a written order of the defendants to the Luit-

weiler Company, accepted by it, of date February 25, 1903; which, omitting immaterial parts, is as follows:

"Gentlemen: You will please install on the ranch of E. Bastady at Lamada Park, Cal., and put in complete running order one of your water pumping plants, complete in all particulars, with all appliances and appurtenances, including the following: . . .

"All to be installed in good working order by you and at your own cost and expense, and without expense to us, with substantial cement foundations under both engine and pump.

"It is understood and agreed that this plant shall be of a capacity ample to pump and deliver at least 180 gallons of water per minute, provided that amount of practically clear water is in the well, and not more than 200 feet from the surface, and it shall pump and deliver at surface said amount of water from said well with a fuel consumption of not more than thirteen pints of distillate per hour.

"In case a test is made and the plant either meets the above requirements or pumps whatever amount of practically clear water is in the well at 200 feet from the surface, we will accept the said plant and pay you for it in cash the sum of sixteen hundred dollars ($1600) in full for the plant.

"Plant to be installed by April 1st, 1903."

The defendants' answers deny the performance of the contract by the plaintiff's assignor, and assign as breach of the contract that the pumping plant tendered by the plaintiff's assignor has not the capacity stipulated in the contract, specifying the particulars wherein it is deficient.

It is also alleged that the contract was rescinded by the defendants; but it is found by the court that the rescission was afterward waived, and the evidence sustains this finding.

The issues to be considered, therefore, are those relating to the capacity of the pump; and as to these the findings of the court (which we number for convenience) are, in effect: (1) That the contract was fully performed by plaintiff's assignor; (2) that the plant was delivered to the defendants and installed in good running order on or before April 1, 1903; (3) that after the installation of the plant the plaintiff's assignor caused the same to be tested, and that the same was found to be complete, in good order and of the capacity specified in said contract, and pumped all the practically clear

water in said well at a depth of 200 feet from the surface; and (4) that after the plaintiff's assignor tendered the pumping plant to the defendants on May 20, 1903, as in full compliance with the terms of said contract, defendants retained the same and made use thereof, and that they accepted said pumping plant.

These findings are attacked by the defendants for insufficiency of the evidence. But the preliminary objection is made that the statement contains no specifications of insufficiency of the evidence. This contention, we think, cannot be sustained. In the copy of the statement appearing in the transcript the specifications do not appear, but we have since been supplied with a copy of the specifications, accompanying though not attached to the statement, which, it appears from the uncontradicted affidavit of the plaintiff's attorney, were on file at the time of the settlement of the statement and used upon the argument of the motion. The original of this document it appears was lost from the records prior to the making out of the transcript; and on the 13th of April, 1906—which was subsequent to the filing of the notice of appeal—an order was made by the court below, ''good cause being shown therefor,'' ''that a copy of the aforesaid statement be filed in the records of said case and dated the twentieth day of October, 1905, and that the same constitute a part of the record and findings in said action and also a part of the statement on motion for a new trial.'' This order, it is claimed by the respondent, in so far as it attempts to make the specifications on file a part of the statement in the case, was beyond the jurisdiction of the court. But assuming this to be the case (for the purposes of the decision only), the fact appears that the specifications in question, though in a separate document from the statement, were in fact treated by the counsel and the court as part thereof; and we are of the opinion that it must, therefore, be so considered.

Of the findings in question, the first must stand or fall with those relating to the particular breaches assigned, and therefore need not be separately considered.

The second finding is without support in the evidence; from which it appears, though the pumping plant was put in place on or about the 1st of April, it was not put in running order until May 20th; nor was it tendered before then. But

4 Cal. App.—34

as it does not appear that any damages were suffered on account of the delay, the fact may be regarded as immaterial.

The third finding is, also, we think, unsupported by the evidence. With regard to it, three questions are involved: One as to the capacity of the plant to pump and deliver one hundred and eighty gallons of water per minute; another as to the amount of water in the well; and another as to the test of the capacity of the plant found to have been made by the plaintiff's assignor.

As to the first question, it appears without conflict from the evidence that the capacity of the plant was much less than one hundred and eighty gallons per minute. Two of the plaintiff's witnesses, indeed, testify in general terms that the plant had such capacity; but this opinion is based upon the assumption, as stated by them, that every revolution of the pump raises five gallons of water; and the contrary is shown by several actual tests, one of them conducted by the witness Luitweiler, president of the plaintiff's assignor. From these it appears that the amount produced by the pump for each revolution was only a fraction above three gallons; and as it was proved without contradiction that the extreme rate at which the engine could be run with safety was from thirty-two to thirty-six revolutions, the total capacity of the plant was very much less than one hundred and eighty gallons.

As to the amount of water in the well, the evidence consists of several actual tests or experiments, conducted by several parties.

The first of these was made May 20, 1903, by the agent of the plaintiff's assignor in the presence of the defendants; by which, according to the evidence of the agent, it was found that the pump was started at twenty-six revolutions and operated satisfactorily, resulting in the production of ten miners' inches of water per minute, equivalent to about ninety gallons; but that when the revolutions increased to about twenty-eight per minute "the sand began to come in quite freely"; or, as otherwise expressed by the witness, "considerable sand came in." Thereupon the plaintiff's agent declined to proceed with the test, unless the defendants would assume the responsibility of its running at that rate, which defendants declined to do. The agent then tendered the plant to the defendant Stahlke, who declined to accept it until the plant could show the production of more water. This test, we think

—anticipating the third question—was altogether insufficient. The complaint was filed on June 24, 1903.

Thereafter, on the twenty-second day of July of the same year, a further test of the pumping plant was made by two expert engineers, Bishop and Packard, assisted by the defendant Stahlke and one of the defendants' attorneys. The result of this was to show: That the extreme limit of speed at which the engine could be safely run was from thirty-two to thirty-six revolutions; that at from twenty-eight to thirty-six revolutions the water produced was from one hundred and four to one hundred and thirty-nine gallons per minute; that, except when the pumping began, the water was clear of sand; and that by measurement actually made the surface of the water was about one hundred and seventy-four feet from the surface of the ground. Another test was made in January, 1904, with similar results, by expert engineers employed by the plaintiff, Allin and Hodge. There was another test made in the following month by the witness Luitweiler, president of the plaintiff's assignor, accompanied by one of its employees. But their testimony is, we think, quite insufficient to raise a doubt as to the facts established by the previous tests.

As to the fourth of the findings recited, it appears that between May 20th, the date of the tender of the plant to the defendants, and the twenty-second day of July, the date of the test made by the defendants' experts, the pumping plant was used by the defendants to water some walnut trees, under the advice of their attorney—that "we should use it simply to not let the trees die"; and this, it may be assumed, was sufficient to justify the finding of the court that the plant was accepted. But there is nothing to justify the finding (which seems to be implied) that it was accepted by the defendants "as in full compliance with the terms of said contract." On the contrary, it appears that the defendants refused to accept the plant when tendered, and that they accepted it, if at all, only upon the condition that it should meet the requirements of the contract.

Upon the case thus shown, we are of the opinion that a new trial must be had. By the terms of the contract, as stated in the last paragraph, the promise of the defendants to pay the sum of $1,600 for the plant was not absolute, but was conditioned upon a successful test showing that the plant met the requirements of the contract. The test made by the plain-

tiff's agent was, as we have said, altogether insufficient to show this; and the contrary was in fact shown by the subsequent actual tests made by the plaintiff's experts. When the suit was brought, therefore, the plaintiff was not entitled to maintain his action for the specific sum named. Nor can he maintain an action for the value of the plant under the preceding paragraph of the contract without showing his compliance with the terms thereof, or the value of the plant actually delivered as compared with the plant contracted for. (Civ. Code, secs. 1477, 1524; *Cavanaugh* v. *Casselman*, 88 Cal. 543, 552, [26 Pac. 515] ; 1 Benjamin on Sales, sec. 48; 2 Benjamin on Sales, sec. 1032, and note 19.)

On another trial, he will be entitled to recover on such showing the value of the plant, not exceeding the sum stipulated in the contract.

The judgment and order appealed from are reversed.

Gray, P. J., and Allen, J., concurred.